# LEVIN-EPSTEIN & ASSOCIATES, P.C.

420 Lexington Ave. • Suite 2525 • New York, NY 10170
T: 212.792-0048 • E: Jason@levinepstein.com

February 27, 2020

*Via Electronic Filing*
The Honorable Magistrate Judge James Orenstein
U.S. District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Feliciano v. Yoon et al*
<u>**Case No.: 18-cv-6361**</u>

Dear Honorable Judge Orenstein:

This law firm represents Plaintiff Garcia Feliciano (the "**Plaintiff**") in the above-referenced action. This letter is submitted jointly with Defendants Kyung Hee Park, Soo Hwan Park, and Dong Kee Restaurant, Inc. (d/b/a Hae Woon Dae) (collectively, the "**Defendants**"), pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015), seeking approval of the enclosed Settlement Agreement, which provides for a total settlement amount of $50,000.00. By notice filed on November 22, 2019, the parties advised the Court that they had reached a settlement of the action. [Dckt. No. 40].

A copy of the executed Settlement Agreement, is attached hereto as "**Exhibit A**."

A copy of the executed Confessions of Judgment is attached hereto as "**Exhibit B**."

A copy of the undersigned's law firm's contemporaneous billing record is attached hereto as "**Exhibit C**."

By Your Honor's Order dated February 6, 2020 [Dckt. No. 48], the Court instructed the parties to supplement the parties' joint motion for settlement approval of the instant case, dated January 20, 2020 [Dckt No. 46] (the "**First Settlement Approval Motion**") as follows:

"Summary: I discussed my concerns with the proposed settlement including: (a) the need to specify in Paragraph 6 that only certain specified terms of the agreement may be modified, and those only with court approval; (b) the lack of contemporaneous billing records and biographical information about billing attorneys sufficient to allow a lodestar cross-check of the proposed fee component; (c) the apparent mistake in calculating the fee as a percentage of the gross settlement amount, rather than as a percentage of the net after deducting costs; and (d) the lack of specificity as to how monthly payments are to be allocated between the plaintiff and counsel. If the court approves a revised proposal before the next conference scheduled above, I will cancel it; otherwise all counsel shall appear in person."

The instant application addresses each of the Court's above-referenced concerns. For the Court's convenience, a blacklined version that shows the revisions between the instant application and the First Settlement Approval Motion is attached hereto as "**Exhibit D**."

1

A Stipulation of Dismissal is being filed simultaneously with this letter motion, and the parties respectfully request that the court So-Order the Stipulation.

## I.     Procedural History

On October 19, 2018, Plaintiff filed a Complaint against Defendants, asserting claims of minimum wage and overtime wage violations, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("**FLSA**") and the New York Labor Law, N.Y. Lab. Law § 650 *et seq.* ("**NYLL**"), as well as spread-of-hours pay and Wage Theft Prevention Act ("**WTPA**") violations pursuant to the NYLL. [*See* Dckt. No. 1].

Plaintiff was employed as a busboy, delivery worker and server at a restaurant operated by Defendants from January 2005, through and including August 15, 2018. *Id*. Plaintiff asserts that from January 2005 until on or about January 2017, he regularly worked six (6) days a week, 12 hours each day, for a total period of 72 hours per week, and that from January 2017 until the end of his employment, he worked five (5) days a week, 12 hours each day, for a total period of 60 hours per week. *Id*. Plaintiff asserts that despite regularly working between 60 to 72 hours per workweek, he received the same pay each week regardless of the number of hours he worked, which he alleges failed to compensate him at the statutorily-required rate of one and one-half their regular rate of pay for hours worked over forty per workweek. *Id*. Plaintiff also claims that he did not receive "spread-of-hours" pay on days when his shifts stretched over ten hours, and wage notices or wage statements as required by the WTPA. Defendants deny each of these claims and further contend that Plaintiff worked far fewer hours. The Defendants further asserted that the records of payment and time records undermined the Plaintiff's factual contentions.

On March 10, 2019, the Court referred the parties to mediation. [*See* March 10, 2019 Dckt. Entry]. Prior to the Court-ordered mediation, the parties submitted *ex parte* mediation statements to Mediator Giulio Zanolla.  The mediation was held on May 2, 2019.  At that time, the parties came close but were unable to accomplish a settlement.

Following the mediation, and prior to the September 24, 2019 initial case conference, the parties continued to engage in substantive settlement discussions.

On September 24, 2019, Plaintiff propounded document discovery demands and interrogatories.  Defendants produced over 500 individual pages of bank statements, tax returns, payroll records, time records and other documents.

On November 22, 2019, the parties reached a resolution in principal to settle this matter for a total sum of $50,000.00 (the "**Settlement Amount**") to be paid out over the course of thirty (30) months.

The settlement is fair, reasonable, and the produce of arm's length negotiations between counsel. For these reasons and those set forth in further detail below, the settlement should be approved.

2

## II.     The Settlement Agreement is Fair and Reasonable

To determine whether an FLSA Settlement Agreement should be approved as fair and reasonable, courts in the Second Circuit consider the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, 2013 WL 4427917, at *2 (S.D.N.Y. 2013) (citation omitted).

### 1.   The Settlement Sum is Substantial and Fair Given the Plaintiff's Range of Recovery

The first factor articulated in *Wolinsky* examines "the Plaintiff's range of possible recovery." *Wolinsky,* 900 F.Supp.2d 332, at 335.

The Settlement Agreement satisfies this prong because Plaintiff's proposed ultimate recovery represents approximately 58.81% of Plaintiff's estimated maximum recovery for unpaid wages, liquidated damages, and wage notice and wage statement penalties. See *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171 at *2 (S.D.N.Y. 2017) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (approving a settlement constituting 25% of the maximum possible recovery)

The method and formula for the derivation of the Plaintiff's reasonable range of recovery assumes the following, after considering Defendants' documentation of hours worked and compensation received:

(i)      Plaintiff would have a low likelihood of recovery for the allegations of unpaid wages in years June 2015 to July 2018 given that Defendants produced time and payroll records for that period;

(ii)     Plaintiff would have a high likelihood of recovery for the allegations of unpaid wages in the years 2012 to May 2015 given that Defendants had questionable time and payroll records for that period;

3

(iii)    Plaintiff was paid $240 per week from years 2012 to May 2015;

(iv)    Plaintiff worked an average of 43.33[1] hours each week throughout his employment from years 2012 to May 2015; and

(v)    Plaintiff worked an average of three (3) spread-of-hours days per week.

Taking these assumptions into account, the undersigned computed that the unpaid minimum wage, overtime premium, and spread-of-hours pay for years 2012 to May 2015 yielded the aggregate amount of $22,909.97. The undersigned yielded this amount by subtracting Plaintiff's lawful wages (minimum wage, plus overtime premium, and spread-of-hours), by Plaintiff's paid wages.

After liquidated damages, and addition of the wage notice and wage statement penalties, Plaintiff's expected recovery would be $55,819.96.

The Settlement Agreement requires that Defendants pay Plaintiff the aggregate settlement sum in the amount of $50,000 to resolve the case over the course of thirty (30) months: an initial payment of $5,000 due five (5) business days after Court approval, and installment payments of $1,500 due on the fifteenth (15th) day of the subsequent thirty (30) months. Each payment of the Settlement Amount shall be allocated between Plaintiff and the undersigned law firm as follows: after deducting costs and disbursements in the amount of $755.00, the undersigned law firm shall receive 1/3 of every payment received, and Plaintiff shall receive 2/3 of every payment received, *to wit*:

| Payment No. | Costs | Attorneys' Fees | Plaintiff's Recovery |
|---|---|---|---|
| Payment 1 (Initial Payment) - $5,000 | $755 | $1,415 | $2,830 |
| Payments 2 – 30 ($45,000) | $0 | $500 | $1,000 |

After attorneys' fees and expenses, Plaintiff will receive payments totaling **$32,830.00** (the **"Settlement Amount"**).

Plaintiff believes that the Settlement Amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of additional discovery.

The number of overtime hours Plaintiff worked was a seriously contested issue that made the settlement of the claims asserted in this action difficult. The parties engaged in discovery to address various issues related to liability and damages, and to gauge Defendants' solvency. In the course of discovery, Defendants provided two categories of documents that affected Plaintiff's

---

[1] The computation of 43.33 hours was derived from the average amount of time worked for the period when the Defendants maintained weekly signed pay and time records.

possible range of recovery: (1) time and payroll records and (2) Defendants' financial documents supporting an inability to satisfy a large judgment.

During the course of Plaintiff's employment, Defendants, in or around 2015, changed their payroll practices that resulted in the maintenance of employee time and payroll records. For example, in the course of discovery, Defendants produced time and payroll records from June 2015 through July 2018 that potentially compromised Plaintiff's claim given that those records had Plaintiff's signed endorsement of weekly pay stubs. Defendants' production of employment records if credited, appear to contradict Plaintiff's claims.

The undersigned law firm conducted an analysis based on the six-year maximum compensable period of time under the NYLL while taking into consideration Defendants' production of records. Through the course of the mediation process and the discovery process, the key issue that evolved concerned whether or not Plaintiff was paid appropriate minimum wage, overtime, and spread-of-hours premiums for all hours worked, which Plaintiff calculated to be $22,909.97

The net proceeds of the Settlement Agreement at the very least compensate Plaintiff for approximately 58.81% of Plaintiff's estimated maximum recovery for unpaid wages, liquidated damages, and wage notice and wage statement penalties, assuming that the finder of fact accepted Plaintiff's version of events, after considering Defendants' documentation of hours worked and compensation received. The Settlement Amount would fully compensate Plaintiff for his unpaid wages, which Plaintiff calculated to be $22,909.97.

Given the risks these issues present, the Settlement Amount is reasonable.

## 2. The Settlement Agreement Avoids the Incurrence of Additional Expenses

The second *Wolinsky* factor examines "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor also weighs in favor of *Cheeks* approval.

The Settlement Agreement resolves bona fide disputes over sharply contested issues, namely the total number of hours worked by Plaintiff. In that regard, Defendants allege that Plaintiff regularly worked no more than forty hours per week, and was paid time and one-half whenever he worked over forty hours in a workweek. During the discovery phase of this case, Defendants relied on time sheets and disclaimers signed by Plaintiff, which Plaintiff rejected as inaccurate. If the trier of fact determined that Plaintiff worked fewer hours as alleged, it is likely that the overtime and spread-of-hours pay due to Plaintiff would be greatly reduced. Proceeding to trial would consume significant amounts of time and resources, and Plaintiff faces the hurdles of rebutting Defendants' time records for certain periods of time. *See Garcia v. Jambox, Inc.,* 2015 WL 2359502, at *3 (S.D.N.Y. 2015) (Plaintiff's burden on the rebuttable presumption is high where Defendants have produced records).

The continued litigation of this case would necessitate no less than four (4) depositions, and a trial. The associated costs the continued prosecution of this case would necessitate the

incurrence of substantial attorneys' fees and costs on both sides. Accordingly, it is in the interests of both parties to effectuate a settlement.

### 3. The Seriousness of the Litigation Risk Faced by both Parties is High

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id at 335.* This factor also weighs heavily in favor of settlement.

Both parties face serious litigation risks as to both liability and damages, *to wit*: prevailing on the amount of overtime allegedly worked, the amount of alleged underpayment of the overtime premium; and the amount of spread-of-hours compensation allegedly owed.

Given that Defendants did not maintain accurate payroll or time records relating to Plaintiff's employment for years 2012 to May 2015, Plaintiff likely would have presented sufficient evidence to show the amounted of uncompensated work alleged in the Amended Complaint during this period as a matter of just and reasonable inference. *See D'Arpa,* 2013 U.S. Dist. LEXIS 85697, at *51 (citing 29 U.S.C. § 211(c)). "'[A]t summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present sufficient evidence to show the amount of [the uncompensated work] as a matter of just and reasonable inference.'" *Id*. (*quoting Kuebel v. Black & Decker Inc*., 643 F.3d 352, 362 [2d Cir. 2011]).

Conversely, Defendants furnished time records and payroll records for years June 2015 to July 2018. Plaintiff, in order to succeed on the merits for this period, would have to rebut the presumption that Defendants did not pay Plaintiff in accordance with NYLL and/or the FLSA. Where, as here, Plaintiff has produced no documentation of his hours worked or compensation received for this period, and Defendants have produced records, the Plaintiff's burden on this rebuttable presumption is high. *Gyalpo v. Holbrook Dev. Corp*., 577 B.R. 629 (E.D.N.Y. 2017); *Garcia v. Jambox, Inc., supra* (S.D.N.Y. 2015).

Additionally, the risk that Defendants would not be able to satisfy a judgment in excess of the settlement amount weighs heavily in favor of final approval. *See* Hernandez v. Loco 111 Inc., 2017 WL 6205809, at *2 (S.D.N.Y. 2017) (*citing Howard v. Don Coleman Advert. Inc*., 2017 WL 773695, at *1 [S.D.N.Y. 2017]). The parties participated in sufficient discovery, such that they were well positioned to evaluate the risk of nonpayment of any judgment due an inability to pay. For example, Defendants' counsel produced counsel several sets of documents regarding Defendants' poor financial condition, including tax returns and bank statements. Together, this information strongly suggests that Defendants would not be able to pay a judgment any greater than the Settlement Amount. The settlement allows Plaintiff to avoid the risk of a pyrrhic victory as the Defendants would likely be unable to pay a significant judgment.

Accordingly, the seriousness of the litigation risks on the part of both parties' continued prosecution of the case weighs in favor of settlement.

### 4. The Settlement Agreement is a Fair Compromise Accomplished Between Experienced Counsel Following Court-Ordered Mediation

The fourth *Wolinsky* factors examines "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel" as well as the "possibility of fraud or

collusion." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor weighs heavily in favor of *Cheeks* approval.

The contested issues, and arms-length negotiation by counsel, demonstrate there was no fraud or collusion. See *Meigel v. Flowers of the World, NYC, Inc*., 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) ([T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement). *Abrar v. 7-Eleven, Inc*., 2016 WL 1465360, at *2 (E.D.N.Y. 2016). Additionally, Plaintiff is satisfied with the settlement amount and voluntarily and willingly entered into the agreement.

The undersigned law firm has successfully defended dozens of corporations and businesses owners in FLSA actions in the Eastern and Southern Districts of New York. *See, e.g., Shimunov v. A & Y Cafe Inc.* [17-cv-04714] (E.D.N.Y 2018); *Rivera v. The Ave Lunch Box, Inc. et al* [17-cv-07154] (E.D.N.Y 2018); *Espinal, et al v. Bi-County Auto and Truck Salvage, Corp., et al* [17-cv-04700] (E.D.N.Y 2018); *Rivera v. The Crabby Shack, LLC* [17-cv-04738] (E.D.N.Y 2018); *Peralta v. JD Beverage Corp. et al.* [18-cv-00118] (E.D.N.Y 2018); *Wee Kwang Oh v. Jema Inc., et al.*; [17-cv-02964] (E.D.N.Y 2018); *Fabre v. S.N.A. Concrete Pumping Corp. et al* [17-cv-05303] (E.D.N.Y 2018); *Simon v. Zarman Surgical Supply, Inc. et al* [17-cv-05112] (E.D.N.Y 2018); *Garcia Hernandez et al v. D&D Alba ConstructionRen Corp. et al* [18-cv-05787] (S.D.N.Y 2018); *Smith v. Digital Social Retail, Inc., et al* [18-cv-06602] (S.D.N.Y 2018); *Mondragon v. El Puerto De Acapulco Bar Restaurant Inc. et al* [17-cv-05613] (E.D.N.Y 2019); *Suarez v. McQuilling LP, et al* [ 17-cv-611] (S.D.N.Y 2018); *Hugo Ortega Hernandez et al v. Muzzarella Inc. et al* [17-cv-06164] (S.D.N.Y 2018); *Clarke v. Pure Green NYC 8th Street Corp, et al* [18-cv-00532] (S.D.N.Y 2018).

Moreover, the Settlement Agreement protects Plaintiff from the risk of default by requiring Defendants to execute Affidavits of Confession of Judgment, which would be entered in the amount due with a penalty in case of default. *See* Ex. B.

### 5. The Time Period for Payment is Reasonable in Light of Defendants' Financial Hardship and the Bargained-For Confession of Judgment.

Under the terms of the Settlement Agreement, Plaintiff would release Defendant from his claims for a total of $50,000 to be paid in thirty (30) installments. Ex. A ¶ 1. Plaintiff would not have agreed to such an extended payment schedule absent credible documentation from Defendants demonstrating their inability to pay in any shorter time frame, the reliability of their commitment to pay consistently over thirty (30) months and the Defendants' execution of Confessions of Judgment in the amount of $75,000. *See* Ex. B.

As discussed in Section 3, *supra,* the parties participated in discovery regarding Defendants' financial hardship. Defendants' bank statements and tax records strongly indicate financial hardship.

Courts have approved similarly structured settlements in previous FLSA cases. *See Mondragon v. El Puerto De Acapulco Bar Restaurant Inc. et al* [17-cv-05613] (E.D.N.Y 2018) at Dckt. No. 65 (approving $30,000 settlement paid out over 25 months); *Rivera v. The Crabby Shack, LLC* [17-cv-04738] (E.D.N.Y 2018) (approving $35,000 settlement paid out over 24

months); *see also McMahon v. Olivier Cheng Catering & Events, LLC*, [08-cv-08713] (S.D.N.Y. 2010) (the "risk of collection weighs in favor of final approval") (*citing Prasker v. Asia Five Eight LLC* [08-cv-05811] (S.D.N.Y. 2010).

In the case of a default by Defendants, unpaid installments are secured by the confessions of judgments, which  would  be entered in the amount due with  a penalty  in case of default.  *See* Ex. B

### III.       The Allocation for Attorneys' Fees and Costs is Reasonable

As Plaintiff's counsel, the undersigned agreed to be paid a 1/3 contingency fee, agreed to by Plaintiff in his Retainer Agreement, which is reduced to writing and is signed by him, a copy of which is attached as "**Exhibit E**".

Disbursements we have paid are limited to the court filing fee ($400), process server fees ($55), and the mediator's fee ($300), which total $755.00. The undersigned deducted that amount from the Settlement Amount, and divided the difference by three, with one-third for legal fees and two-thirds to Plaintiff. Proof of disbursements are included in "**Exhibit F**".

Since the filing of the case, Plaintiff's  counsel expended considerable time and effort in the prosecution of this case, including the attendance at a mediation held on May 2, 2019, multiple conferences with the Court on September 24, 2019 and January 8, 2020; multiple in-office conferences with Plaintiff, the drafting of a motion for conditional certification; the analysis and review of no less than 500 pages of documents and time records; and multiple telephonic conferences with Defendants' attorney.  *See* Ex. C.

A brief biography of each attorney who performed billed work in this matter is as follows:

Joshua D. Levin-Epstein, Esq. is billed at the rate of $450 per hour, which is his standard billing rate for wage-and-hour matters paid on an hourly basis. He is the founder and managing member of Levin-Epstein & Associates, P.C., and has been in practice since 2006.

Prior to founding the firm, Mr. Levin-Epstein was part of the Business Solutions, Governance, Restructuring & Bankruptcy practices at international and national law firms where he represented constituents in complex litigation and transactional matters. He also served as Law Clerk to the Honorable Alan H.W. Shiff in the United States Bankruptcy Court for the District of Connecticut (Bridgeport Division). Mr. Levin-Epstein received a B.S. in Foreign Service from the Edmund A. Walsh School of Foreign Service at Georgetown University. At Georgetown University, Mr. Levin-Epstein received several merit-based scholarship awards. Mr. Levin-Epstein received his J.D. from The University of Michigan Law School.

Mr. Levin-Epstein previously chaired the Labor and Employment Subcommittee for the New York City Bar Association's Hospitality Law Committee.  He authored a White Paper on the history of the development of local Community Boards in New York City.

Jason Mizrahi, Esq. is an associate at Levin-Epstein & Associates, P.C., and is billed at the rate of $225 per hour. At the time Plaintiff's engagement agreement was signed, this was his

standard rate for wage and hour matters on which he is paid at an hourly rate. Mr. Mizrahi earned his B.A. from the University of Maryland, and his J.D. from Brooklyn Law School in 2016. Following law school, he practiced as an associate at a boutique law firm concentrating in labor and employment law. He was previously In-House Counsel and Human Resources Manager for a wholesale baking company headquartered in the Bronx, with global operations in China, South Korea and the United States.

The firm has obtained favorable decisions in wage-and-hour cases that have set precedent in this area of law. *See Rivera v. The Crabby Shack, LLC* [17-cv-04738] (E.D.N.Y 2019) at Dckt. No. 49 [successfully arguing motion to enforce and approve settlement agreement on behalf of defendants]*; Reyes et al v. The Picnic Basket, Inc. et. al.* [18-cv-00140] (S.D.N.Y 2018) (successfully opposing Plaintiff's motion for conditional certification); *Pugh v. Meric* [18-cv-3556] (S.D.N.Y 2019) (successful bench trial) at Dckt. No. 107 (Decision and Order of the Hon. Judge Denise Cote, holding that the "wage notice penalty" in NYLL § 198(1)(1-b), by its very terms, does not mandate the imposition of damages), and Dckt. No. 118 (Decision and Order of the Hon. Senior Judge Denise Cote, reducing attorneys' fees award of $8,000 to $800).

The firm's FLSA experience includes the following cases in the Southern and Eastern Districts of New York:

| | |
|---|---|
| *Ramos v. 175th Street Laundromat, Inc. et al* | 19-cv-9545 |
| *Shimunov v. A & Y Cafe Inc* | 17-cv-04714 |
| *Roman et al v. ABC Corp. et al* | 19-cv-6628 |
| *Oswaldo et al v. Kim et al* | 18-cv-3140 |
| *Fafara v. Arenas, Parks & Stadium Solutions, Inc. et al* | 18-cv-09294 |
| *Rivera v. The Ave Lunch Box, Inc. et al* | 17-cv-07154 |
| *Elizabeth Gonzalez et al v. Banaco II LLC et al* | 19-cv-05602 |
| *Pugh v. Bestall Moda, LLC* | 27036/2017E |
| *Espinal, et al v. Bi-County Auto and Truck Salvage, Corp., et al* | 17-cv-04700 |
| *Marcos v. Café Riviera Inc. et al* | 19-cv-03981 |
| *Espinosa v. Carefree Painting Associates, Inc. et al* | 19-cv-01150 |
| *Rivera v. The Crabby Shack, LLC* | 17-cv-04738 |
| *Garcia Hernandez et al v. D&D Alba ConstructionRen Corp. et al* | 18-cv-05787 |
| *Espinobarros Basurto et al v. Diala Deli Gourmet Corp. et al* | 19-cv-09792 |
| *Smith v. Digital Social Retail, Inc., et al* | 18-cv-06602 |
| *Pineda et al v. Dique Pic Productions LLC et al* | 19-cv-03168 |
| *Basurto et al v. Eda Food Inc. et al* | 18-cv-8858 |
| *Mondragon v. El Puerto De Acapulco Bar Restaurant Inc. et al* | 17-cv-05613 |
| *Lucero v. Gallitos Mexican Urban Kitchen Inc* | 18-cv-01542 |

| | |
|---|---|
| *Franco v. Galvis & Musa, Corp. et al* | 19-cv-3828 |
| *Seo v. I.P.T Name and Design Inc. (d.b.a Tyche NYC) et al* | 19-cv-2202 |
| *Peralta v. JD Beverage Corp. et al.* | 18-cv-00118 |
| *Wee Kwang Oh v. Jema Inc., et al.* | 17-cv-02964 |
| *Flores-Colin v. La Oaxaquena Restaurant Corp. et al* | 18-cv-02966 |
| *Reyes v. Labra Telecom, Inc. et al* | 19-cv-09955 |
| *Singh v. Lintech Electric, Inc. et al* | 18-cv-05780 |
| *Evans v. Manhattan Carpets Inc. et al* | 19-cv-10298 |
| *Suarez v. McQuilling LP, et al* | 17-cv-6113 |
| *Pugh v. Meric* | 18-cv-03556 |
| *Hugo Ortega Hernandez et al v. Muzzarella Inc. et al* | 17-cv-06164 |
| *Carlos Alvarado et al v. New Rams Deli Plus Inc. et al* | 18-cv-08650 |
| *Rodriguez v. New York Fast General Contracting Corp, et al* | 18-cv-04072 |
| *Carter v. Nite Corporation* | 19-cv-4511 |
| *Alvarado, et al. v. Organic Food Nautral Juices & Coffee Shop, Corp., et al* | 18-cv-03952 |
| *Chincha v. Patel* | 17-cv-06127 |
| *Reyes et al v. The Picnic Basket, Inc. et al.* | 18-cv-00140 |
| *Ortiz Ochoa et al v. Prince Deli Grocery Corp. et al* | 18-cv-09417 |
| *Clarke v. Pure Green NYC 8th Street Corp, et al* | 18-cv-00532 |
| *Coronel v. Royal Katsuei Inc* | 19-cv-3054 |
| *Buestan v. Ryszard Food Distributor, Inc. et al* | 19-cv-04273 |
| *Fabre v. S.N.A. Concrete Pumping Corp. et al* | 17-cv-05303 |
| *Obispo Guinea v. Sagal Meat Market VII Inc. et al* | 19-cv-03448 |
| *Pacheco v. Sammy Dry Cleaners, Inc. et al* | 17-cv-7931 |
| *Cervantes Isidoro et al v. Siam SMP Inter, Inc. et al* | 19-cv-04054 |
| *Acharya v. 7-Eleven, Inc., et al* | 18-cv-08010 |
| *Hernandez Alejandro v. Steven Stile Farmers Mkt No 2 LLC et al* | 19-cv-09504 |
| *Strulowitz v. Flavor Boutique 796 Inc. et al* | 18-cv-08382 |
| *Reyes et al v. Tava Cafe LLC et al* | 18-cv-10210 |
| *Ullo v. RFR Holding L.L.C. et al* | 18-cv-11281 |
| *Anselmo Lopez et al v. Uno Express Cleaners Inc. et al* | 18-cv-10737 |
| *Rojas et al v. Velkonel Restaurant, Inc. et al* | 17-cv-6616 |

| *Simon v. Zarman Surgical Supply, Inc. et al* | 17-cv-05112 |
| *Bellas v. Abraham and Abraham Attorneys and Counselors at Law, LLC et al* | 19-cv-04901 |

The contingency fee in this case should be approved because it is the fee Plaintiff agreed upon in his retainer agreement in his dominant language. *In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written.").

Moreover, the one-third contingency is the fee which courts in this District consider to be presumptively fair in FLSA cases. *See, e.g., Castillo v. Cranes Express Inc*., 2018 WL 7681356, at *5 (E.D.N.Y. 2018) (same); *Vidal v. Eager Corp*., 2018 WL 1320659, at *2 (E.D.N.Y. 2018); *Ezpino v. CDL Underground Specialists, Inc*., 2017 WL 3037483, at *3 (E.D.N.Y. 2017); *Hdir v. Salon de Quartier*, 2017 WL 8950426, at *2 (E.D.N.Y. 2017) ("Courts in this district using the percentage method have found a fee award of one third of the settlement amount to be reasonable".) (*citing Romero v. Westbury Jeep Chrysler Dodge, Inc*., 2016 WL 1369389, at *2 [E.D.N.Y. 2016]); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 WL 6621081 at *3 (E.D.N.Y. 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp*., 2013 WL 5308277 at *2 (E.D.N.Y. 2013) (approving attorney's fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit");

Based on this, the requested fee of one-third of plaintiff's recovery should be found reasonable and permitted. The parties respectfully request that the Court approve the settlement as fair and reasonable and So Order the proposed Stipulation to Dismiss the case.

## IV.   A Summary of the Revisions to the Instant Application and the Settlement Agreement

i)   With respect to the need to specify in Paragraph 6 of the Settlement Agreement, that only certain specified terms of the agreement may be modified, and those only with court approval, the Parties' have agreed to eliminate that provision. Thus, it is respectfully submitted that issue is no longer relevant for the Court's consideration of the instant application.

ii)   With respect to contemporaneous billing records and biographical information, Section III includes an overview of the firm and biographical information for each of the attorneys.  Exhibit C includes contemporaneous billing records. As set forth above, the billing records are maintained electronically.

iii)   With respect to calculation of the net settlement award payment to Plaintiff, the firm used the following calculation: gross amount of $50,000 less costs in the amount of $755, yields a net amount of $49,245, of which the attorneys' fee payment of 1/3 of the net yields $16,415, resulting in a total payment to Plaintiff in the amount of $32,830.

iv)     With respect to the breakdown of payments, Section II(1) shows that the Settlement Payment shall be allocated as follows:

| Payment No. | Costs | Attorneys' Fees | Plaintiff's Recovery |
|---|---|---|---|
| Payment 1 (Initial Payment) - $5,000 | $755 | $1,415 | $2,830 |
| Payments 2 – 30 ($45,000) | $0 | $500 | $1,000 |

## V.     The Agreement Satisfies All Other Factors Considered for Approval

The terms of the Settlement Agreement are consistent with Cheeks. For example, the release in the Agreement is limited to wage-and-hour claims and there are no confidentiality or non-disparagement provisions. The settlement was reached following arm's-length negotiations between counsel well-versed in wage-and-hour law after the parties exhausted negotiations at a mediation before an experienced alternative dispute resolution practitioner and following extensive discovery.

In sum, the settlement is fair and reasonable, providing Plaintiff with a substantial recovery protected against the uncertainties and costs of trial, and should be approved by the Court.

We thank the Court for its time and consideration of this matter.

Respectfully submitted,

LEVIN-EPSTEIN & ASSOCIATES, P.C.

By:  */s/ Jason Mizrahi*
     Jason Mizrahi, Esq.
     420 Lexington Ave., Suite 2525
     New York, NY 10170
     Tel. No.:  (212) 792-0048
     Email: Jason@levinepstein.com
     *Attorneys for Plaintiff*

12